UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **GEROSKI HARMON** | : | **DOCKET NO. 2:12-cv-1286** |
| **VS.** | : | **JUDGE MINALDI** |
| **U.S. COMMISSIONER OF SOCIAL SECURITY** | : | **MAGISTRATE JUDGE KAY** |

### REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of Supplemental Security Income Benefits. This matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

After review of the entire administrative record and the briefs filed by the parties, this court recommends that the Commissioner's decision should be AFFIRMED and this matter DISMISSED with prejudice.

### PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on July 20, 2010. alleging disability beginning on May 1, 1997.  Tr. 193-96.  Plaintiff alleged disability due to a learning disability and asthma.  Tr. 353-69.  The claim was initially denied on December 2, 2010.  Tr. 81-92.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  Tr. 97.  At the hearing held on October 13, 2011, plaintiff, his mother, and a vocational expert ("VE") testified. While plaintiff was represented by counsel at one point during his application process, he was not represented by counsel at the hearing.  Following the hearing the ALJ issued an unfavorable

decision dated November 18, 2011. Tr. 5-14. In this decision the ALJ applied the five-step sequential evaluation process and determined that plaintiff was not disabled under the Social Security Act. *Id.* The ALJ found at Step 2 that plaintiff's impairments of chronic brain disorder, learning disorder, asthma and allergies were not severe. *Id.* She found that singly and in combination plaintiff's impairments do not significantly limit his ability to perform basic work activities. Thus, the ALJ determined that plaintiff was not disabled. *Id.*

Plaintiff filed a request for appellate review of this decision and on March 14, 2012, his request was denied. Tr. 1-4. On May 18, 2012, plaintiff filed suit in this court appealing the determinations of the Commissioner. Doc. 1. He is represented by counsel on appeal.

## FACTS AND MEDICAL EVIDENCE

*A.  Facts*

At the time of the hearing, plaintiff was 19 years old. He testified that he graduated from high school and was enrolled as a freshman at San Jacinto College in Houston, Texas. Tr. 53-54. He stated that he is majoring in physical education because he likes sports. Tr. 55. He is 5'6" tall and weighs 170 pounds. Tr. 53. He plays wide receiver on the football team in college. Tr. 57. He testified that he has "bad problems reading." Tr. 55. He stated that he can read some of a newspaper but has trouble reading in college. *Id.* He stated that he took the driver's test on his own and has a valid driver's license. Tr. 56. He is able to fill out a job application and considers himself proficient in math. *Id.*

When asked about his disabilities plaintiff stated that he doesn't "understand a lot. That's basically it." Tr. 56. He stated that he can barely play sports with his asthma. Tr. 57. He can only play for about half of the game and then has to sit out. *Id.* He is taking medication for asthma and allergies which he testified helps alleviate his symptoms. Tr. 58. He also takes

medication for attention deficit disorder which he stated helps him by calming him down and making him pay attention. *Id.*

In the past plaintiff has worked part-time as a fry cook and a bus boy. Tr. 59, 61. He testified that he can bench press 200 pounds and can run 100 yards. Tr. 61. He can dress himself, get into and out of the shower, can do household chores such as emptying the trash, cleaning his dishes, laundry and cleaning his room. Tr. 62-63.

Plaintiff's mother Lashawn Harmon testified that she is 39 years old and has a ninth grade education. Tr. 65. She stated that she was addicted to drugs when her son was born and her parents had to raise him. *Id.* She stated that her son has complications reading and that his allergies and asthma also affect his life. Tr. 68. She stated that her son is in reading comprehension classes in college. *Id.*

### B. *Medical Evidence*

#### 1. *Southwest Louisiana Center for Health Services*

The medical evidence from Southwest Louisiana Center for Health Services shows that on July 13, 2010. plaintiff was seen for an annual physical. Tr. 419-21. He was 18 years old at the time and complained of frequent sneezing, itchy, watery eyes. *Id.* He requested an asthma pump and stated he was using his inhaler about twice a week. *Id.* His physical examination revealed a well-appearing adolescent in no acute distress. *Id.* He was diagnosed with asthma and allergic rhinitis and his medications were updated. *Id.*

On December 20, 2010, plaintiff was referred for an evaluation and treatment for attention deficit disorder. Tr. 434-45. Office notes from January 28, 2011, show that plaintiff was treated for otitis externa, an ear infection. Tr. 462. On March 3, 2011. he was seen for a follow-up exam. Tr. 463-66. He reported that since he began medicine for his attention deficit

disorder he has been passing exams, been able to focus, and complete tasks. *Id.* It was also noted that his exercised induced asthma had improved. *Id.* On May 5, 2011, plaintiff was seen for allergic rhinitis and asthma. Tr. 454-59. It was noted that his rhinitis had not improved on medication and he was referred to an ENT. *Id.* His asthma had improved, intermittent symptoms were noted, and his medication was altered. *Id.* Notes indicate that his attention deficit disorder was improved and he was doing well on his current medication. *Id.*

### 2. Jerry Whiteman, Ph.D.

At the request of Disability Determination Services, plaintiff was seen by psychologist, Jerry Whiteman. On September 28, 2010 he performed a psychological consultative examination. Tr. 422-23. Plaintiff indicated that his primary weakness was reading and that he was a senior in high school and receiving resource room assistance for one hour a day. *Id.*

Dr. Whiteman administered the Wechsler Adult Intelligence Scale –IV ("WAIS-IV") test. Plaintiff earned a full scale IQ score of 68, a verbal comprehension score of 66 and a perceptual reasoning score of 75. *Id.* His working memory index score was a 63 and processing speed score was an 89. *Id.* Dr. Whiteman noted that these scores reflect a significant variation in plaintiff's skills or abilities. *Id.* He opined that plaintiff's cognitive abilities are varied noting his average ability in processing speed and deficits in his working memory. *Id.* He stated that his mathematical skills are limited to simple addition and subtraction. *Id.* He added that the scores may reflect a learning disability rather than mental retardation. *Id.* His diagnostic impression following the examination was no diagnosis for Axis I and mild mental retardation/learning disability/reading deficits for Axis II. *Id.* He opined that a more comprehensive mental status examination would be required in order to address any possible clinical syndromes. *Id.*

On November 23, 2010, plaintiff was re-evaluated by Dr. Whiteman at the request of Disability Determination Services. Tr. 426-29. He performed a mental status examination and determined that plaintiff's ability to understand and follow directions was adequate but his motivation to persevere was inconsistent. *Id.* He noted that plaintiff was cooperative but his effort was marginal. *Id.* He determined that plaintiff has no behavioral or emotional problems and his social interactions and daily activities are age appropriate. *Id.* Dr. Whiteman commented that the psychological evaluation he conducted earlier revealed functioning on the cusp of mild mental retardation and borderline capabilities with a significant degree of scatter in his skills. *Id.* His diagnostic impression following the evaluation was no diagnosis for Axis I, borderline intelligence/learning disability for Axis II and asthma for Axis III. *Id.*

### 3. *Joseph Kahler, Ph.D.*

Dr. Kahler was retained in order to complete a Disability Determination Evaluation in order to determine disability at the primary stage of plaintiff's application. Tr. 81-92. Initially, Dr. Kahler commented that he did not have enough information in the file in order to make an assessment. Tr. 425. However, following Dr. Whiteman's September 28 and November 23, 2010, evaluations, Dr. Kahler concluded that plaintiff was not disabled. Tr. 91. Dr. Kahler opined that plaintiff "appears to have a learning disability rather than mental retardation. He is likely to have trouble understanding, remembering, and executing detailed instructions on complex tasks; however, he should have no significant trouble with simple work or even moderately complex tasks that do not rely on traditional academic skills." Tr. 88.

### 4. *Lawrence Dilks, Ph.D.*

A psychological evaluation was performed by Dr. Dilks on February 8, 2011, on a referral from the Louisiana Rehabilitation Services.[1]  Tr. 437-42.  The WAIS-IV was administered with plaintiff receiving a full scale IQ score of 72, a verbal comprehension score of 70 and a perceptual reasoning score of 79.  *Id.*  His working memory index score was a 71 and processing speed score was an 89.  *Id.*  Dr. Dilks noted that these scores reflect that plaintiff is functioning in the borderline range of intelligence.  *Id.*  Following the evaluation Dr. Dilks had no diagnosis for Axis I and diagnosed borderline intellectual functioning for Axis II.  *Id.*  Dr. Dilks opined that the results are believed to be reliable and valid.  *Id.*

## STANDARD OF REVIEW

"In Social Security disability cases, 42 U.S.C. § 405(g) governs the standard of review." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Frith v. Celebrezze*, 333 F.2d 557, 560 (5th Cir. 1964)).  The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error.  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Greenspan*, 38 F.3d at 236).  "It is 'more than a mere scintilla and less than a preponderance.'" *Id.* (quoting *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)).  It is "such relevant evidence as a reasonable mind might accept to support a conclusion.  It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

---

[1] The report by Dr. Dilks indicates plaintiff was evaluated on a voluntary outpatient basis.  Tr. 437.

In applying the substantial evidence standard, the reviewing court critically inspects the record to determine whether such evidence is present, "but may not reweigh the evidence or substitute its judgment for the Commissioner's." *Perez*, 415 F.3d at 461 (citing *Greenspan*, 38 F.3d at 236; *Masterson*, 309 F.3d at 272). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 272).

## LAW AND ANALYSIS

### A. *Burden of Proof*

The burden of proving that he or she suffers from a disability rests with the claimant. *Perez*, 415 F.3d at 461. The Social Security Administration defines a "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting at least twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ conducts a five-step sequential analysis to evaluate claims of disability, asking:

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment[2]; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work

---

[2] A severe impairment or combination of impairments limits significantly a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). Basic work activities are defined at 20 C.F.R. § 404.1521(b). The term severe is given a *de minimis* definition as found in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). According to *Stone*, "[a]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." 752 F.2d at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)).

If a severe impairment or combination of impairments is found at step two, the impairment or combined impact of the impairments will be considered throughout the disability determination process. 20 C.F.R. §§ 404.1520, 404.1523. A determination that an impairment or combination of impairments is not severe will result in a social security determination that an individual is not disabled. *Id.*

>(whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work.

*Id.* (citing 20 C.F.R. § 404.1520). If the claimant meets the burden of proof on the first four steps, the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy. *Id.* "Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut this finding." *Id.* (quoting *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000)).

The analysis ends if the Commissioner can determine whether the claimant is disabled at any step. *Id.* (citing 20 C.F.R. § 404.1520(a)). On the other hand, if the Commissioner cannot make that determination, he proceeds to the next step. *Id.* Before proceeding from step three to step four, the Commissioner assesses the claimant's residual functional capacity (RFC). *Id.* "The claimant's RFC assessment is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Id.* at 461-62 (citing 20 C.F.R. § 404.1545(a)(1)). Specifically, in determining a claimant's RFC, an ALJ must consider all symptoms, including pain, and the extent to which these symptoms reasonably can be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; Social Security Ruling 96-8p. The ALJ must also consider any medical opinions (statements from acceptable medical sources) that reflect judgments about the nature and severity of impairments and resulting limitations. 20 C.F.R. § 404.1527, Social Security Rulings 96-2p, 96-6p. The claimant's RFC is considered twice in the sequential analysis—at the fourth step it is used to determine if the claimant can still do his or her past relevant work, and at the fifth step the RFC is used to determine whether the claimant can adjust to any other type of work. *Perez*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1520(e)).

Here, the ALJ found that plaintiff was not disabled at Step 2 of the sequential analysis. The ALJ found that plaintiff's physical and mental impairments were not severe and did not significantly limit his ability to perform basic work activities. Tr. 14.

### B.  *Plaintiff's Claims*

In his appeal plaintiff argues that substantial evidence does not support the ALJ's decision. Specifically, he sets forth the following arguments:

(1) The ALJ denied plaintiff due process of law; plaintiff's written waiver of the right to counsel is invalid.

(2) The ALJ applied the incorrect legal standards to conclude that plaintiff's aggregate impairments did not meet the step two durational and severity requirements of the commissioner's regulations.

(3) The ALJ misapplied 20 C.F.R. 404, Subpart P, Appendix I, §12.05(C).

### 1.  Did the ALJ deny plaintiff due process by denying him the right to counsel?

Plaintiff argues that at the hearing on October 13, 2011, the ALJ failed to properly advise him of his right to counsel. Citing the case of *Clark v. Schweiker,* 652 F.2d 399, 403 (5th Cir. 1981), plaintiff argues that, since he was unrepresented at the hearing, the court was required to inform him of how an attorney could aid him in the proceeding, the possibility of free counsel or a contingency fee arrangement, the limitation of attorney fees to twenty-five percent of past due benefits, and the requirement of court approval of fees. Plaintiff contends that the ALJ did not explain how an attorney could help him "in attaining and presenting evidence and/or requesting a post-hearing consultative examination of a documentary nature, or how counsel could assist in preparing witness testimony of family members, including the claimant and/or requesting the appointment of expert witnesses, including questioning or cross-examining government consultative examiners or medical and vocational experts." Doc. 8, p. 6. Plaintiff claims he was prejudiced by this error.

The Commissioner asserts that on at least three occasions prior to the hearing plaintiff was notified in writing of his right to counsel including the right to free representation and the limitation of attorney fees. Relying on *Castillo o/b/o Castillo v. Barnhart,* 325 F.3d 550, 552 (5th Cir.2003), the Commissioner contends that the numerous written notices along with an oral reminder at the hearing of his right to counsel is sufficient to proceed without representation. Furthermore, the Commissioner argues that the mere lack of counsel is insufficient for reversal. Plaintiff must additionally show that he was somehow prejudiced by being unrepresented and the Commissioner argues that he has failed to make such a showing.

A social security claimant does not have a constitutional right to counsel at a social security hearing, *Goodman v. Richardson,* 448 F.2d 388 (5th Cir.1971), but does have a statutory right to have counsel present at a hearing. 42 U.S.C. § 406, 20 C.F.R. § 404.1705. A claimant may waive his right to counsel if he is given sufficient information to enable him to intelligently decide whether to enlist the services of an attorney or to proceed without counsel. "'Sufficient information' includes explanations of the possibility of free counsel, a contingency agreement, and the limitation on attorney's fees to 25% of past due benefits awarded." *Watson v. Astrue,* 2008 WL 4072831 at *2 (W.D.La.2008)(citing *Clark v. Schweiker,* 652 F.2d 399, 403-04 (5th Cir.1981)). A mere lack of counsel will not automatically invalidate an ALJ's decision; rather, the claimant must show that he was prejudiced thereby. *Brock v. Chater,* 84 F.3d 726, 729 n. 1 (5th Cir.1996). To establish prejudice a claimant must show that he "could have adduced evidence that might have altered the result." *Id.* (citing *Kane v. Heckler,* 731 F.2d 1216, 1220 (5th Cir.1984)).

In this case the record reflects that plaintiff was given notice of his right to an attorney on several occasions in advance of the hearing. Tr. 98-100, 101-15, 170-82. He was also provided

an informational pamphlet entitled "Your Right To Representation" which included information regarding how an attorney could help him, attorney fee agreements, the limitation of fees to no more than 25% of past due benefits, and a list of organizations that could help him secure counsel. Tr. 104-08, 177-78. The record also reflects that plaintiff actually hired an attorney to represent him[3] but terminated her services prior to the administrative hearing by letter dated August 16, 2011. Tr. 117, 119-20, 145-46, 169. At the hearing plaintiff signed a waiver of right to representation in which he acknowledged receiving information about getting a representative prior to the hearing. Tr. 189. Also, at the outset of the hearing the ALJ questioned plaintiff regarding waiving his right to representation:

> ALJ: And I do see that you are unrepresented today. Is that correct?
>
> CLMT: Yes, ma'am.
>
> ALJ: Okay. Thank you very much. I also have before me a form that you completed. It says waiver of right to representation.
>
> CLMT: Yes, ma'am.
>
> ALJ: Do you – okay. Do you, in fact, understand that you have the right to be represented?
>
> CLMT: Yes, ma'am.
>
> ALJ: And you're indicating with this form that you would like to go forward without a representative, correct?
>
> CLMT: Yes, ma'am.
>
> …
>
> ALJ: This document that you completed, it says waiver of right to representation. I understand my right to representation at the hearing. I voluntarily and

---

[3] An Appointment of Representative form and Representation Agreement were both signed on January 12, 2011 appointing Margaret Edwards, an attorney, as his representative in this proceeding.

         knowingly waive that right and have requested to proceed with a hearing without a representative. I also acknowledge I received a list entitled information about getting a representative prior to or at the time of receiving the notice for this hearing. It appears to be signed by you. Is that correct, sir?

   CLMT:   Yes, ma'am.

   ALJ:   And you also dated that today?

   CLMT:   Yes, ma'am.

Tr. 44-45

  We conclude that the numerous written notices to plaintiff coupled with the fact that he had previously hired an attorney but decided to terminate that relationship for whatever reason and the ALJ's reminder at the hearing of his right to counsel, sufficiently informed him of his right to an attorney and that he validly consented to proceed without representation. Furthermore, even if plaintiff had not validly waived his right to proceed without an attorney he points to no evidence that would have been adduced at the hearing that could have changed the result had he been represented by an attorney. Therefore, plaintiff has failed to demonstrate that he was prejudiced by the absence of counsel at the hearing.

    **2. Did the ALJ apply the incorrect legal standard at Step 2?**

  Plaintiff argues that the ALJ erred at Step 2 of the evaluation. First, he asserts that the ALJ applied the incorrect legal standard in order to determine if plaintiff's impairments should be considered severe; and second, he contends that the ALJ erred in finding that plaintiff's mental impairment did not meet the durational requirement. Plaintiff asserts that the ALJ improperly applied a "significantly limiting" standard instead of the correct "slight abnormality" standard as enunciated in *Stone v. Heckler,* 752 F.2d 1099 (5th Cir.1985). He also argues that

the ALJ improperly determined that plaintiff's mental condition failed to meet the twelve month durational period of impairment.  Plaintiff maintains that these legal errors require reversal and remand.

The Commissioner asserts that even if the ALJ applied the incorrect legal standard, the Fifth Circuit case of *Taylor v. Astrue,* 706 F.3d 600 (5th Cir.2012), holds that if substantial evidence supports a non-severity finding any error by the ALJ in not following *Stone* is harmless. The Commissioner argues that substantial evidence supports the ALJ's finding that plaintiff's impairments or combination of impairments were not severe; thus he maintains that reversal is not required.

Under 20 C.F.R. §§ 404.1520(c), 419.920(c), an impairment or combination of impairments is considered "not severe" if claimant's physical or mental ability to do basic work activities is not "significantly limited."  However, the Fifth Circuit has adopted a different standard for determining whether an impairment is severe.  In *Stone,* the Fifth Circuit held that an impairment can be considered as "not severe" only if it is a "slight abnormality" having such a minimal effect on an individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.  *Stone v. Heckler,* 752 F.2d at 1101 (emphasis added).  The Fifth Circuit stated in *Stone* that unless the correct standard was either set forth by reference or expressly stated in its opinion, it would assume the ALJ did not apply the correct standard. *Id.* at 1106.

Subsequent to its decision in *Stone*, the Fifth Circuit published a decision holding that even if an ALJ errs in failing to follow the procedures set out in *Stone*, such error does not automatically require remand unless the claimant is harmed by the error. *Taylor v.* Astrue, 706 F.3d 600, 603 (5th Cir. 2012).  Citing *Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir.1988), the

court noted that "procedural perfection is not required unless it affects the substantial rights of a party." Under *Taylor*, a *Stone* error does not require remand but is instead subject to a harmless error analysis. In *Taylor* the court found substantial evidence supported the ALJ's finding that claimant's mental health claims were not severe enough to prevent him from holding substantial gainful employment. Thus, the court found "any error by the ALJ in not following the procedures set out in *Stone* [wa]s harmless." *Id.*

In this case, at Step 2 of the sequential analysis the ALJ found:

> The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 416.921 *et seq.*). (Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985).

Tr. 10.

The ALJ explained her finding and recited the applicable law. Her very next sentence sets forth the applicable *Stone* standard. She wrote that "impairments can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Tr. 10. The ALJ went on to find that plaintiff's medically determinable impairments of chronic brain syndrome, learning disorder, asthma, and allergies "do not cause more than minimal functional limitations of the claimant's ability to perform work related activities." *Id.* Although the ALJ may have occasionally used the words "significantly limits" in her opinion, we conclude that after reading the opinion as a whole she properly analyzed plaintiff's impairments.

The ALJ reviewed and discussed the medical records introduced and considered

plaintiff's testimony before ultimately determining that plaintiff was capable of performing basic work activities. The ALJ considered the opinion of Joseph Kahler, Ph.D. who performed a mental status consultative examination on November 23, 2010 an,d ultimately found that plaintiff had a learning disability but was not disabled and was capable of working. Tr. 11. Jerry Whiteman's two psychological evaluations dated September 28, 2010, and November 23, 2010, were also considered. Tr. 12. The ALJ noted the WAIS-IV full scale IQ score of 68 and Dr. Whiteman's observation that plaintiff's scores as a whole reflect a significant variation in his skills or abilities, that his ability to understand and follow directions was adequate but his motivation to persevere was inconsistent. *Id.*

The ALJ considered treatment notes from the Southwest Center for Health Services which included a referral for attention deficit disorder evaluation and treatment, a diagnosis of an ear ache, allergic rhinitis and asthma. *Id.* The ALJ noted that at a psychological evaluation performed by Lawrence Dilks, Ph.D. on February 8, 2011 plaintiff, received a full scale IQ score of 72 and a diagnosis of borderline intellectual functioning. *Id.*

The ALJ accorded great weight to plaintiff's testimony in which he indicated that he graduated from high school, played football, attended community college majoring in physical education, and could lift 200 pounds and walk 200 yards. Tr. 13. The ALJ additionally evaluated plaintiff's mental impairment with reference to Listing 12.00 C (20 C.F.R, Part 404, subpart P, Appendix I) and the four function areas known as the "paragraph B" criteria. She determined that plaintiff's mental impairment caused no more than mild limitation in any of the first three functional areas and found no episodes of decompression in the fourth area, thus finding his mental impairment to be non-severe. Tr. 13-14.

Although plaintiff argues that the ALJ improperly applied a 12 month durational

requirement in relation to his mental impairments, the ALJ's opinion does not reflect that she considered any durational requirement in relation to plaintiff's mental impairment. We find that the medical records submitted are entirely consistent with a *Stone* finding of non-severity.

Here, the ALJ cited the *Stone* standard and properly evaluated the evidence before making her determination that plaintiff's impairments were not severe and did not preclude him from engaging in basic work activities. We conclude that she did not apply the improper legal standard simply because she used the words "significantly limits" in her opinion.

Furthermore, even assuming the ALJ did not apply the correct standard, we find any error to be harmless. As evidenced by the medical records detailed above substantial evidence supports the ALJ's decision. Plaintiff does not argue, and has failed to demonstrate, that the ALJ would have reached a different income even had she found his impairments to be severe so he has failed to show he was prejudiced as a result of her finding. Therefore, we find that if any error was committed, it was harmless.

### 3. Did the ALJ misapply 20 C.F.R. 404, Subpart P, Appendix I, §12.05(C)?

Plaintiff argues that the ALJ should have found that he was disabled under Listing 12.05(C). He submits that his IQ scores of 66 and 70 satisfy the first prong of the listing and that ALJ should have found that he suffered from the severe impairment of mild mental retardation which would have satisfied the second prong. He concludes that the ALJ erred in not finding him disabled under Listing 12.05(C).

The Commissioner asserts that plaintiff has failed to meet his burden of showing that he meets Listing 12.05(C). The Commissioner argues that in order to meet a listing, all the criteria of the listing must be met. In particular, under 12.05(C) plaintiff must show a valid verbal, performance, or full scale IQ of 60 through 70 *and* a physical or other mental impairment

imposing an additional and significant work-related limitation of function. The Commissioner maintains that plaintiff has not met his burden of proving that his conditions satisfy Listing 12.05(C).

>20 C.F.R. Part 404, Subpart P, Appendix I, Listing 12.05 provides:
>
>>Mental Retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>>
>>The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>>…
>>
>>C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional significant work-related limitation or function[.]

The listings set out at 20 C.F.R. § 404 are descriptions of physical and mental illnesses and abnormalities which are categorized by the body system they affect. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just "substantial gainful activity." *Sullivan v. Zebley,* 110 S.Ct. 885, 891 (1990); 20 C.F.R. § 404.1525 and § 416.925. Thus, a finding that a claimant's impairment satisfies a listing compels a finding of disabled without any further analysis. Listings criteria are "demanding and stringent." *Falco v. Shalala,* 27 F.3d 160, 162 (5th Cir.1994). A mere diagnosis of a condition will not suffice. The claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing." § 404.1525(d); § 416.925(d). The burden of proof rests with a claimant to provide and identify medical signs and laboratory findings that support all criteria for a Step 3 listing determination.

*Sullivan,* 110 S.Ct. at 891. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Selders v. Sullivan,* 914 F.2d 614, 619 (5th Cir.1990).

Here, the ALJ stated:

> The claimant achieved a full scale I.Q. of 68 on the WAIS-IV. … A psychological evaluation was performed by Lawrence S. Dilks, Ph.D., on February 8, 2011 on a referral from the Louisiana Rehabilitation Services. … A WAIS-IV was administered. The claimant achieved a full scale score of 72. … Moreover, he does not have a physical or other mental impairment, which imposes an additional and significant work related limitation o[r] function. Thus, the required level of severity for 12.05 Mental Retardation A, B, C, or D, has not been met.

Tr. 14.

We agree with the ALJ that the medical evidence does not show that plaintiff suffered from a "physical or other mental impairment which imposes an additional and significant work related limitation or function." The evidence of record establishes that plaintiff graduated from high school, was attending college, and playing football. Tr. 53-57. His asthma and allergies were being treated with medication and there is no indication from any medical provider that either symptom interfered with his ability to work. Tr. 419-21, 463-66, 454-59. His attention deficit disorder was responding well to medication. Tr. 463-66. Simply put, there is no evidence that plaintiff's impairments rendered plaintiff unable to work. Since plaintiff has not shown that he meets all the criteria of the Listing 12.05(C), the ALJ was correct in finding that plaintiff was not disabled under the Social Security Act.

## CONCLUSION

Based on the foregoing, we find substantial evidence of record and relevant legal precedent support the ALJ's decision that plaintiff is not disabled. It is therefore

RECOMMENDED that the ALJ's decision be AFFIRMED and this matter be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE this 21st day of May, 2014.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE